# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **LARRY D. JONES** | * | **CIVIL ACTION NO.  3:11-cv-1761** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **WARDEN, LOUISIANA STATE PENITENTIARY** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Larry D. Jones filed the instant petition for writ of *habeas corpus*
pursuant to 28 U.S.C. § 2254 on September 27, 2011.  Petitioner is an inmate in the custody of
Louisiana's Department of Public Safety and Corrections; he is incarcerated at the Louisiana
State Penitentiary, Angola.  Petitioner attacks his conviction on four counts of attempted first
degree murder and the sixty-year sentence imposed by the Fifth Judicial District Court, Richland
Parish.  This matter has been referred to the undersigned for review, report, and recommendation
in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

## BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit
Court of Appeal:

> On October 1, 2004, Robin Jones, the defendant's estranged wife, called the Franklin
> Parish Sheriff's Office ("FPSO") and reported that the defendant, carrying a .22 rifle,
> had just left her house after telling her that he had killed two people at his residence.
> The dispatcher sent FPSO Deputies Amos Winn and LaFayette Ainsworth to the
> defendant's home.
>
> The deputies drove to the defendant's residence in separate patrol cars. Deputy
> Ainsworth blew the air horn on his vehicle in an effort to get the defendant's

attention, and then both deputies walked up to the front door of the mobile home. Deputy Ainsworth asked the defendant to step outside and speak to them; he partially opened the door and ordered them to get off his property. Deputy Ainsworth continued to try to talk to him. The defendant then stepped fully out of his front door, armed with a scoped Ruger .22 caliber rifle which he pointed at the deputies as he again told them to leave his property.

When the deputies saw the firearm, they immediately sought cover. Deputy Winn went to the nearby tractor shed while Deputy Ainsworth concealed himself behind a farm implement near the shed. As Deputy Ainsworth was reaching cover, the defendant began firing his rifle. Because he believed that the defendant was firing toward the road, not at them, Deputy Winn did not return fire. The deputies tried to get the defendant to put down the firearm, but he continued to order the deputies to leave the property.

Still armed with the rifle, the defendant left his trailer and walked toward his truck. Deputy Winn ordered him to drop the weapon; at that point, the defendant aimed the rifle at Deputy Winn. Deputy Winn then fired his handgun in the direction of the defendant, who was about 45 feet away. The defendant did not move but continued to aim the rifle at Winn; Winn said that the defendant was apparently "waiting for me to expose myself good enough to where he can get a good bead on me."

The defendant got into his truck, braced the rifle on the door, and continued to aim his rifle at the shed where the deputies were located. He was apparently unable to see them. Instead of leaving the property, the defendant drove the truck toward the shed, at which point the deputies moved around to another side of the shed in an effort to stay behind cover. As the deputies moved, the defendant continued to maneuver his truck to get closer to them; however, he was unable to get them into the open. Eventually, he gave up and drove away in his truck.

Ty Britt, the police chief of the Town of Gilbert, responded to the deputies' radio call for assistance. Chief Britt positioned his car across Prather Road, the defendant's escape route. Britt, standing next to his car, attempted to get the defendant to stop, but the defendant drove his truck into the ditch alongside the road, struck the driver's side door on Chief Britt's patrol car, and kept going.

FPSO Deputy Kevin Cobb was driving up onto the scene as the defendant passed Britt, and he began to pursue the defendant. When Cobb reached the intersection of Prather Road and Highway 128, he saw the defendant's truck stopped in the roadway about 75 yards from him. The deputy then saw the defendant sitting in the truck; he had the rifle, resting on the door of his truck, pointing directly at the deputy. Deputy Cobb ducked down inside his vehicle, and the defendant drove away.

Cobb then resumed his pursuit of the defendant, who drove to the parking lot of Turkey Creek Baptist Church. Franklin Parish Sheriff Steve Pylant and Deputy Lester Thomas also joined the pursuit and arrived at this location with Deputy Cobb. Sheriff Pylant, who knew the defendant and thought he could talk to him, came over to Deputy Cobb and asked him not to shoot the defendant. The defendant was still in his truck pointing the rifle out of the window. Deputy Cobb ordered the defendant to drop the rifle; however, the defendant accelerated and turned his truck in order to point the rifle at Cobb and the sheriff. Pylant dove back into his vehicle for cover as the defendant began firing at him; at the same time, Deputy Cobb, beside and behind Pylant's vehicle, began firing his pistol at the defendant. Sheriff Pylant's vehicle was facing the defendant, and one bullet from the defendant's rifle struck the front grill of Pylant's vehicle.

During the shootout, Pylant's face was cut by either a bullet fragment or flying glass from a shot that hit one of his windows. Some bullet fragments from inside the sheriff's vehicle were determined to be from a .40 S & W caliber bullet fired by an officer. A firearms examiner opined that the holes in the sheriff's windshield were most likely caused by bullets fired by an officer. One shot fired by Deputy Cobb grazed the side of the defendant's head, causing him to cease firing and drop his rifle. The rifle was empty of ammunition when it was recovered. Two .22 caliber shell casings were recovered from the interior of the defendant's truck; testing revealed that they were fired from the defendant's rifle.

The defendant fled in his truck. Deputies Cobb and Thomas pursued him at speeds over 100 miles per hour. Although Sheriff Pylant initially joined the pursuit, the condition of his vehicle forced him to stop; he later sought treatment at the hospital. The defendant drove to his wife's house, exited his truck and tried to kick the front door open. The deputies arrived and arrested him. He was advised of his Miranda rights by Deputy Cobb.

EMT Danny Posey responded to the scene to treat the defendant's injuries. Posey loaded him into the ambulance while asking him questions to determine the extent of his head injury; Posey said that the defendant was able to answer his questions appropriately. Posey believed that the defendant was not seriously injured and that he was not under the influence of alcohol or drugs. During the ambulance ride to the hospital, the defendant told Posey that he had tried "to kill Sheriff Pylant . . . for messing with his wife."

FPSO Deputy Mark McMurray was in the hospital emergency room and heard the defendant say to all the people there that "he had video tape evidence that Sheriff Pylant and Kevin Cobb had slept with his wife." McMurray also heard the defendant say that he meant to kill the sheriff and Cobb but did not mean to kill the first two deputies. The emergency room nurse testified that the defendant appeared to be alert

and oriented when he was admitted, and she did not observe evidence that he was under the influence of alcohol or drugs. Analysis of the defendant's blood revealed no evidence that he had consumed alcohol before these events; the analysis did show that the defendant had Valium in his system. The testing did not reveal the presence of cocaine, but there was not enough blood available for the lab to do a more sensitive test that might have revealed the presence of that drug. Hospital records show that the defendant told medical personnel that he "shot at police in an attempt to make the police kill him . . . ."

*State v. Jones*, No. 43,053, *1-5 (La. App. 2 Cir. 2/20/08); 982 So.2d 105, 108-110.

On November 23, 2004, petitioner was charged in Franklin Parish with five counts of attempted first degree murder; the fourth count was later amended to a charge of aggravated criminal damage to property. Thereafter, due to the high publicity of a similar case, a change of venue was granted and the trial was held in Richland Parish. A Richland Parish jury convicted petitioner on four counts of attempted first degree murder, violations of La. R. S. 14:30, 14:27, and acquitted him on the aggravated criminal damage to property charge. *See* State Court Record ("R."), p. 642.

Sentencing was held in Franklin Parish. The trial court sentenced petitioner to serve the maximum sentence of fifty years in prison at hard labor without benefit of probation, parole, or suspension of sentence on each count. The court ordered the sentences to be served concurrently except for the first ten years of the sentence for count one, which was to be served consecutively with the first ten years of the sentence for count five. *See* R. pp. 677-78.

On November 5, 2007, petitioner's appointed counsel filed an appeal with the Second Circuit Court of Appeal where he presented issues of excessive sentence and sufficiency of the evidence. *See* R. pp. 688-703. With the court's permission, petitioner filed a supplemental appeal brief where he raised issues of prosecutorial misconduct, improper sequestration of witnesses, and improper sanity determination. *See* R. pp. 729-37. On February 20, 2008, the

4

court denied all claims presented.  *See Jones*, *supra*, 982 So.2d 105.

On April 1, 2008, petitioner sought further review in the Louisiana Supreme Court.  ***See*** R. p. 782.  On October 10, 2008, his writ application was denied without comment.  R. p. 783.

On July 30, 2009, petitioner filed a *pro se* Application for Post-Conviction Relief in the Fifth Judicial District Court raising the same ineffective assistance of counsel claims asserted herein.  R. pp. 784-828.  On February 25, 2010, the district court denied relief.  R. pp. 909-18. On March 26, 2010, petitioner sought review in the Second Circuit Court of Appeals.  *See* R. p. 920.  On June 3, 2010, the court of appeals denied relief.  R. p. 925.

Thereafter, on July 7, 2010, petitioner sought review in the Louisiana Supreme Court.  R. p. 926.  That court denied relief on August 19, 2011.  R. p. 927; *State ex rel. Jones v. State*, No. 2010-1588 (La. 8/19/11); 67 So.3d 1240.  Petitioner filed the instant petition on September 27, 2011.  Doc. # 1.  He now argues the following claims of ineffective assistance of counsel for (1) failure to investigate critical aspects of the defense; (2) failure to develop meaningful relationship with petitioner; (3) failure to object to the introduction of hearsay testimony; (4) failure to pursue suppression of statements to the Louisiana Supreme Court; (5) failure to object to the improper sequestration of witnesses; (6) failure to object and move for mistrial due to State's improper comments to the jury; (7) failure to prepare a proper defense on petitioner's specific intent to kill. *Id.*  He also argues claims of: (8) insufficiency of the evidence; (9) excessive sentence; (10) prosecutorial misconduct; (11) improper sequestration of witnesses; and (12) improper determination of sanity.  *Id.*

## LAW AND ANALYSIS

### I.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,

governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, —— U.S. ——, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II.     Petitioner's Claims

A.        **Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.

*United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).  To prevail on a claim of ineffective

assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an

objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him.

*Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  If the defendant does not make a

sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v.*

*Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in

any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions

"fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687.  There is a

strong presumption that counsel performed adequately and exercised reasonable professional

judgment.  *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).  Furthermore, "a conscious and

informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective

assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious

unfairness."  *Id.* (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004).

To prove prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine

confidence in the outcome" and is less than a preponderance of the evidence.  *Id.* at 693-94.

**1. Failure to Investigate Critical Aspects of the Defense**

First, petitioner argues that his trial counsel erred by failing to investigate "critical aspects

of the defense."  Doc. # 1-1, p. 11.  Petitioner claims that a photograph, alleged to depict a bullet

lodged in the front grill of Sheriff Pylant's truck, was not in fact a photograph of the sheriff's vehicle.  He claims that a simple investigation by his attorney would have revealed that the photograph shows a maroon or red vehicle, contradicting testimony that the sheriff drove a white GMC Yukon.  Petitioner argues that the attorney's failure to uncover and challenge this evidence prejudiced his case, since the bullet was one of the key pieces of evidence introduced to show that he had the specific intent to kill.

The undersigned has carefully reviewed the photograph that is the subject of this claim, and agrees with the respondent that it clearly depicts a white vehicle.  The photo is a close-up shot of the left portion of the front grill of a vehicle, and it shows a white bumper surrounded by silver chrome.  There is a certain red coloration on the left side of this chrome, which follows the chrome as it runs along the underside of the grill.  The manner in which the red coloration traces down the chrome makes it abundantly clear that something red is being reflected in the chrome.

No evidence has been presented that might show that the performance of petitioner's attorney was deficient in any way.  The Second Circuit noted in its opinion that the testimony of the State's witnesses as to the shootout at the church was "thoroughly and vigorously tested through cross-examination.  Generally the testimony was favorable to the defendant in that it tended to show that the shots that broke the glass in the sheriff's car came from a deputy's gun, not from the defendant."  *Jones*, *supra*, 982 So.2d at 117.  Applying *Strickland*, the trial court found that the petitioner had not shown ineffective assistance on this issue.  Since the undersigned cannot find this application unreasonable, this claim should be DENIED.

## 2. Failure to Develop a Meaningful Relationship with Petitioner

Petitioner next contends that his trial counsel was ineffective by failing to adequately develop a meaningful relationship and establish trust.  He claims the attorney only met with him

twice before the trial, and that this lack of communication damaged his case.  Specifically, he says that if counsel had communicated with him, the attorney would have understood that petitioner did not have the specific intent to harm anyone other than himself.

In contrast to petitioner's claims, the record shows that his attorney was quite familiar with the defense strategy he describes.  The attorney elicited testimony from petitioner's ex-wife and a Doctor Scurria that illustrated the extent of his drug abuse, erratic behavior, and alleged mental problems in the time period surrounding the crimes.  Petitioner's own brief admits that his wife testified he was a good shot with a rifle and could have killed the officers had he so intended.  He also admits that the first two officers at the scene testified that petitioner had fired away from their direction, and that other testimony showed he did not fire his weapon at the church parking lot.  In addition, the Louisiana Second Circuit noted that the testimony of the State's witnesses regarding the church shootout was "thoroughly and vigorously tested through cross-examination."  *Jones*, *supra*, 982 So.2d at 117.

In sum, the defendant's claim that the attorney "failed to stress to the jury" the point that he lacked the specific intent to kill the officers is completely unsupported by the record. Petitioner has thus failed to show that his attorney's performance was deficient in this regard, and his second claim of ineffective assistance of counsel should be DENIED.

### 3.  Failure to Object to the Introduction of Hearsay Testimony

Petitioner's third claim alleges that his attorney was ineffective for failing to object to the state's introduction of alleged hearsay testimony.  In particular, he claims that Nurse Angie Gill was allowed to testify as to statements made by petitioner to his emergency room physician, when she had no first-hand knowledge of these statements.  He also argues that Nurse Gill contradicted herself by first testifying that petitioner was transported to Monroe by ambulance,

and later revealing she did not know how he was transported.

First, the emergency room statements were not hearsay.  Petitioner objects that the nurse was allowed to testify as to the statements instead of the doctor, and he complains that his attorney's failure to call the doctor to the stand denied him the right to confront the witness against him.  Doc. # 1-1, p. 17.  Therefore, it appears that the statements petitioner is challenging as hearsay are not his own statements to the physician, but rather any statements by the doctor relaying the message to the nurse.  As noted by the state court, however, Nurse Gill testified that she was with the petitioner the entire time he was with the doctor.  R. p. 455.  Thus, petitioner has not shown that the doctor ever made any statements to the nurse which might be inadmissible as hearsay.  Moreover, the statements by petitioner to the doctor in the nurse's presence are admissible as party-opponent admissions under Fed. R. Evid. 801(d)(2)(A), s*ee also United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984) ("Any and all statements of an accused person not excluded by the doctrine of confessions or the privilege against self-incrimination may be used against him as an admission and are not hearsay."), and any objection to these statements would have been meritless.

As for the testimony regarding petitioner's transportation to Monroe, petitioner has not shown how his attorney's failure to object to it was deficient or prejudiced him in any way.  He simply claims that the testimony was "speculative."  The record suggests, however, that the nurse simply did not remember how petitioner had been transported to Monroe.  Once petitioner's attorney reminded her that he was taken in a police unit, she agreed that may have been the case.  R. p. 451-52.  It is not clear what else the attorney could have done at this point, and petitioner thus fails to show how the attorney's performance was objectively unreasonable in this regard.  And in any event, it is difficult to see how this minor, seemingly irrelevant detail could have had

10

any prejudicial effect on the outcome of petitioner's case.

Accordingly, the undersigned finds that petitioner has failed to satisfy the *Strickland* test with regard to these two pieces of testimony, and his third claim of ineffective assistance of counsel should be DENIED.

### 4. Failure to Pursue Suppression of Statements to the Louisiana Supreme Court

In petitioner's fourth claim, he argues that his attorney was ineffective for failing to seek writs with the Louisiana Supreme Court following the denial of a motion to suppress. The motion to suppress concerned three sets of statements made by petitioner prior to receiving *Miranda* warnings: 1) statements made to EMT personnel in the ambulance; 2) statements made in the emergency room in Winnsboro; and 3) statements made to the officer who transported petitioner to the hospital in Monroe.[1] He now claims that these statements were taken in violation of his Fifth and Fourteenth Amendment rights, and his attorney's failure to protect these rights amounted to ineffective assistance of counsel.

The circumstances here do not indicate that the attorney's performance was deficient. Although the attorney did not pursue any further remedies once the motion to suppress was denied, such action would have been futile. Petitioner first complains that EMT technician Danny Posey, who also happens to be an auxiliary deputy with the Franklin Parish Sheriff's Office, questioned him without administering the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).

---

[1] A review of the record reveals that Deputy Kevin Cobb did in fact read petitioner his *Miranda* rights when Cobb arrested him at his wife's house. *See* R. p. 337. Both parties seem to ignore this fact; nevertheless, for purposes of this claim, the undersigned will assume that petitioner was not properly Mirandized.

The Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during custodial interrogation without a *Miranda* warning.  *Miranda*, 384 U.S. at 444.  "A suspect is in custody for purposes of *Miranda* when he is placed under formal arrest or when a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest."  *United States v. Gonzalez*, 121 F.3d 928, 939 n.6 (5th Cir. 1997).  Interrogation, for purposes of *Miranda*, includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  Thus, spontaneous statements initiated by the defendant and not made in response to questions posed by the police do not qualify as statements made during interrogation. *Pennsylvania v. Muniz*, 496 U.S. 582, 603-04 (1990).

Here, the record clearly reflects that the statements made to Posey were spontaneous, and not in response to questioning by the police.  Posey testified that he asked petitioner several questions of a medical nature, including a question as to how petitioner had been shot.  Petitioner responded that he was trying to kill the sheriff and Tim Pylant for having sexual relations with his wife.  R. pp. 100-01.  Posey emphasized that no one in the ambulance interrogated petitioner or asked him anything other than questions related to his treatment.  *Id.*  Further, despite petitioner's contention that "it is undisputed that Mr. Jones was under the influence of drugs at the time of the alleged incriminating statements," this fact is very much in dispute.  Posey testified that petitioner exhibited no signs of being under the influence of drugs.  R. p. 108. Finally, and perhaps most importantly, Posey was not asking questions in his capacity as auxiliary sheriff's deputy; he repeatedly testified that he was there in the ambulance in his

capacity as a medical professional.  *See* R. pp. 106, 108, 111.

    As for petitioner's statements in the police car, the record shows they were similarly spontaneous.  Deputy Mark McMurray testified that he tried to ignore petitioner during the car ride to Monroe.  R. p. 117.  McMurray would actually have to turn the radio down so that he could hear what petitioner was saying.  R. p. 120.  It was at this time that petitioner voluntarily offered statements relating to his intending to kill Sheriff Pylant and Kevin Cobb, among other things.  R. p. 115.  McMurray also testified that petitioner did not appear to be under the influence of drugs or alcohol.  R. p. 122.

    Finally, petitioner claims the evidence shows the emergency room statements were given involuntarily, since he was under the influence of both narcotics and a sedative administered by emergency room staff.  However, the undersigned cannot find any support in the testimony for petitioner's assertions.  In fact, Nurse Gill testified at trial that petitioner was not administered a sedative or any pain medication during his treatment; she did not believe he was intoxicated; and he was "awake, alert, and oriented," despite the head injury.  R. pp. 451, 453, 446.  Deputy McMurray also testified that the statements were not in response to any questioning by police officers.  R. p. 114.

    In sum, there was no evidence presented at the motion hearing or any other time that might have formed the basis for further action by petitioner's trial counsel.  The attorney objected to the admissibility of the statements, preserving the issue for appeal.  Petitioner, however, chose not to raise the issue on appeal, even though he filed a supplemental *pro se* brief raising three other issues.  *See* R. pp. 729-37.  For these reasons, petitioner fails to meet his burden of showing that the attorney's failure to seek writs was objectively unreasonable, and his fourth claim of ineffective assistance of counsel should be DENIED.

**5. Failure to Object to the Improper Sequestration of Witnesses**

In petitioner's next claim, he alleges that his attorney was ineffective for failing to object to the trial court's decision to allow the State's witnesses to remain in the courtroom during each other's testimony. Petitioner claims that the four police officers, who were both the victims and the primary witnesses for the State, were not effectively separated during trial as required by La. Code of Evid. Art. 615.

La. Code of Evid. art. 615 provides, in part:

A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.

B. Exceptions. This Article does not authorize exclusion of any of the following:

. . . .

(4) The victim of the offense or the family of the victim.

In this case, three witness testified on the first day of trial. The court did not formally sequester these witnesses, but the record indicates that none of the three witnesses heard the testimony of the others. *See* R. p. 252. At the beginning of the second day of trial, petitioner's counsel asked for sequestration of the witnesses for that day, which included all of the police officers who were victims of the alleged attempted murders. The court placed the witnesses under the rule, subject to article 615's exemption for victims of the offense. R. pp. 250-51.

In his *habeas* brief, petitioner argues that article 615 also requires that the exempted victim give his testimony before the exemption can be effective. Doc. # 1-1, p. 22. However, as noted by the Second Circuit, petitioner is citing to an older version of the article. "The article was amended to its present form by Acts 1999, No. 783, § 2, which became effective January 1,

2000.  Under the current law, the victims have a right to be in the courtroom and are not subject to a sequestration order." *Jones*, *supra*, 982 So.2d at 117, n.2 (citing *State v. Johnson*, 2001-2334 (La. App. 4th Cir. 12/4/02); 833 So.2d 508).  Furthermore, the Second Circuit also pointed out that the testimony of the police officers contained several minor differences that suggested that they were relying on memory rather than the testimony of the others. *Jones*, *supra*, 982 So.2d at 118.

For these reasons, it is clear that any further action taken by petitioner's attorney on this issue would have been meritless.  Thus, petitioner fails to meet his burden of showing that the attorney's performance was objectively unreasonable, and his fifth claim of ineffective assistance of counsel should be DENIED.

### 6. Failure to Object and Move for Mistrial Due to State's Improper Comments to the Jury

Petitioner's sixth claim argues that the prosecutor misrepresented the facts to the jury during his closing argument and that his counsel was ineffective for failing to object to same. Petitioner points to two specific incidents to support his allegation.  The first concerns the prosecutor's arguments regarding the testimony of an expert witness on petitioner's mental capacity at the time of the crime.  The second incident concerns the prosecutor's comments that there was no proof that the defendant was under the influence of Xanax at the time of the offense.

Despite petitioner's claims, his attorney was not ineffective for failing to object to these statements because neither statement was improper.  Under Louisiana Code of Criminal Procedure article 774, the scope of closing argument extends to the evidence admitted, the lack of evidence, any conclusions of fact that may be drawn therefrom, and the law applicable to the

case.  La. C. Cr. P. Art. 774.  Furthermore, a prosecutor has considerable latitude in making closing arguments.  *State v. Robbins*, No. 43,240 (La. App. 2 Cir. 6/4/08); 986 So.2d 828, 833. Before a verdict will be overturned on the basis of improper argument, a reviewing court must be firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict.  *State v. Taylor*, 93-2201 (La. 2/28/96); 669 So.2d 364, 375, *cert. denied*, 519 U.S. 860 (1996).

Here, not only were the statements proper, the undersigned fails to see how they could even be construed as misleading.  The expert witness, Dr. Scurria, testified that based on the information he had, he did not think petitioner suffered from a mental impairment that prevented him from distinguishing right from wrong.  R. pp. 582-83.  Petitioner claims the prosecutor misled the jury by saying during closing argument that Dr. Scurria's answer to that question was "no, based on everything I know today, no."  *See* R. p. 611.  This certainly seems like an accurate representation of the testimony and was not improper.

As for the second comment, the prosecutor admitted to the jury during closing that the crime lab technician's testimony was somewhat confusing.  R. p. 612.  However, the prosecutor correctly pointed out that there was no proof that petitioner was under the influence of Xanax at the time of the offense.  R. p. 602.  Petitioner claims the prosecutor's comment misled the jury into believing he had not been under the influence of any drugs, when in actuality there was never any test done for the drugs alleged.  The statement was entirely accurate, however; no evidence had been presented that petitioner was on that particular drug.  Moreover, the jury was fully aware of the issues with the blood test, so it is difficult to see how the comment would have affected their verdict.

In conclusion, the record clearly reflects that neither comment made by the prosecutor during closing arguments was improper.  Therefore, trial counsel's failure to object to these statements did not constitute ineffective assistance, and petitioner's sixth claim should be DENIED.

### 7. Failure to Prepare a Proper Defense on Petitioner's Specific Intent to Kill

Petitioner next alleges that there was insufficient evidence of his specific intent to kill, and that his attorney was ineffective for failing to convince the jury that he was trying to commit "suicide by cop."  As the jury, the Second Circuit, and the state *habeas* judge have previously determined, however, the evidence presented was sufficient to prove petitioner had the specific intent to kill all four of the officers.

Regarding the standoff involving Deputies Winn and Ainsworth, the evidence showed petitioner first told them to leave, then armed himself with a rifle.  He then got into his truck, where he had partial cover, aimed his rifle at the officers, and maneuvered his truck into a better position from which to shoot them.  Finally, it was only when the officers were able to elude petitioner that he grew impatient and left the scene.

As for the shootout at the church, numerous witnesses testified petitioner pointed a gun at the officers, sought out the officers with a loaded weapon, and fired his weapon at the officers. The gun used by petitioner was found to be empty when it was finally seized from him after he was overcome by force and arrested.  A bullet matching his rifle was lodged directly in the grill of the sheriff's vehicle, indicating a direct shot.  In fact, petitioner even admitted he was shooting at police and trying to kill the sheriff.

It is also important to note that petitioner did not call the police to his location; rather, his

estranged wife made the call that prompted the police to investigate.  He also did not expose himself to fire; he evaded capture to the point where he led the officers on a high speed chase over the course of more than fifteen miles.  He eventually surrendered only when overcome by force.  Considering all this, the undersigned believes the totality of the evidence was more than sufficient for a rational jury to find that petitioner had the specific intent to kill the four officers.

In any case, the attorney's entire trial strategy was to show that petitioner lacked the specific intent to kill and was attempting "suicide by cop."  The attorney called witnesses to testify and elicited testimony on cross-examination that petitioner was under the influence of drugs, that he had a history of depression and attempted suicide, and that he never fired at Deputies Ainsworth and Amos.  The record thus indicates that, despite petitioner's claims, his attorney presented the defense of "suicide by cop" to the jury, but the jury rejected it.  For these reasons, petitioner has failed to show his counsel's performance was ineffective in this regard, and his seventh claim should be DENIED.

### B.      Insufficiency of the Evidence

For petitioner's eighth claim, he argues that the evidence was insufficient to prove the elements of the crime of attempted first degree murder beyond a reasonable doubt.  In support of this claim, petitioner essentially raises the same arguments as in some of his earlier claims.  For example, he again argues that at the time of the incident he was suffering from severe delusions as a result of his drug abuse, and that he was only attempting to commit "suicide by cop."  Thus, it appears that the only element of the offense petitioner disputes as having been proven is the requirement that the offender have the specific intent to kill.

When a habeas petitioner asserts that the evidence presented to the court was insufficient

to support his conviction, the limited question before a federal habeas court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana appellate court invoked and applied the *Jackson* standard. *Jones*, *supra*, 982 So.2d at 111-12. The court then referenced the definitions relevant to the crime of attempted first degree murder under Louisiana law. *Id.* at 112. La. R.S. 14:27 provides, in part:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

> B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.

La. Rev. Stat. Ann. § 14:27 (2011). La. R.S. 14:30 provides, in part:

A. First degree murder is the killing of a human being:

. . . .

(2) When the offender has a specific intent to kill . . . a . . . peace officer . . . engaged in the performance of his lawful duties, or when the specific intent to kill . . . is directly related to the victim's status as a . . . peace officer . . . .

*Id.* § 14:30.

Specific intent to commit a crime is an element of an attempted offense. *See id.* § 14:27. Hence, a conviction of an attempted offense must rest upon sufficient proof that the offender actively desired to cause the prescribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. *Id.* §§ 14:10, 14:27; s*ee also State v. Cheatham*, 38,413 (La. App. 2d Cir. 6/23/04); 877 So.2d 164.  The state must prove that the offender had the specific intent to kill, not merely intent to cause great bodily harm, in order to convict a defendant of attempted murder.  *State v. Butler*, 322 So.2d 189 (La. 1975).

Again, petitioner does not challenge any of the elements of the offense of attempted first degree murder other than the requirement of specific intent to kill.  *See* Doc. # 1-1, pp. 35-36.  As the undersigned determined in analyzing petitioner's seventh claim, the government clearly established that petitioner possessed the requisite intent.  *See supra* Sec. II.A.7.  In addition, the Louisiana appeals court, applying the *Jackson* standard, found the evidence sufficient beyond a reasonable doubt to support a conviction for attempted first degree.  *Jones*, *supra*, 982 So.2d at 113-14.  The undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable in this regard; therefore, petitioner's eighth claim should be DENIED.

## C.    Excessive Sentence

Next, petitioner claims that the sentence imposed by the trial court was excessive, in

20

violation of the Eighth Amendment.  In particular, he argues that his sixty year sentence—fifty years on each count to run concurrently, except for ten years on counts three and five to run consecutively—was unconstitutionally excessive because it "is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime."  Doc. # 20, p. 8.  He claims that it is virtually a "life sentence," and that the goals of punishment could be better accomplished with a less severe sentence.  *Id.*

Federal habeas courts must accord wide discretion to a state trial court's sentencing decision, and claims arising out of the decision are generally not constitutionally cognizable. *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987) (citations omitted).  However, relief may be required where the petitioner can show that his sentence exceeds or is outside the statutory limits, or is wholly unauthorized by law.  *Id*. at 923-24.  If a sentence is within the statutory limits, as here, the petitioner must show "that the sentencing decision was wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion' . . . or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty."  *Id*. at 924 (citations omitted).

Petitioner was convicted of four counts of attempted first degree murder and sentenced to the maximum sentence of fifty years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, on each of the four counts; the court also ordered that all sentences run concurrently except for the first ten years on two of the counts, which were to be served consecutively to each other.  R. pp. 677-78.  Petitioner contends that the sentences imposed, especially the ten year consecutive terms, were excessive in light of his history as a good citizen and in light of his drug abuse and delusions at the time of the offense.  According to the Second Circuit, however, the trial court considered these factors, as well as the sentencing

21

guidelines contained in La. C. Cr. P. art. 894.1.  Both courts determined that the seriousness and violent nature of petitioner's actions, the possible harm to numerous victims, the likelihood he would commit another crime, his criminal history, and his complete lack of remorse all supported the maximum sentence.  R. pp. 671-75; *Jones*, *supra*, 982 So.2d at 116.  Moreover, the trial court stated that it was imposing ten years of two of the sentences consecutively because there were two separate shooting incidents separated by a high-speed chase.  R. p. 678.

The undersigned finds that, especially given the severity of petitioner's crimes, the state courts' determinations do not amount to "arbitrary or capricious abuse[s] of discretion."  *See Butler*, *supra*, 825 F.2d at 924.  As the Second Circuit noted, "[i]n a short period of time, the defendant tried to kill four law enforcement officers and engaged them in two high-speed pursuits.  It is difficult to imagine a more serious case of attempted first-degree murder."  *Jones*, *supra*, 982 So.2d at 116.  For these reasons, petitioner's sentence was not unconstitutionally excessive, and his ninth claim should be DENIED.

**D.      Prosecutorial Misconduct**

In petitioner's tenth claim, he argues that the prosecutor knowingly presented evidence and solicited testimony that was false or misleading.  In particular, petitioner objects to the prosecutor's handling of certain witnesses.  He argues the prosecutor misrepresented the facts and knowingly solicited misleading testimony, violating petitioner's right to a fair trial.

The Supreme Court has stated that if a prosecutor knowingly uses relevant but false testimony to obtain a conviction, that conviction violates an individual's due process rights under the Fourteenth Amendment.  *Napue v. Illinois*, 360 U.S. 264, 269-70 (1959).  Furthermore, knowingly using perjured testimony is grounds to vacate a conviction "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v.*

22

*Agurs*, 427 U.S. 97, 103 (1976).

Petitioner first points to the prosecutor's questioning of Danny Posey, the EMT, who testified at both the suppression hearing and the trial regarding petitioner's statements that he had intended to kill the sheriff and Tim Pylant.  Specifically, Posey testified at the suppression hearing that petitioner made the statements in response to a question, and then at trial he testified that petitioner made the statements voluntarily.  *See* R. pp. 101, 413.  Petitioner argues that this testimony was inconsistent, and the prosecutor had a duty to correct the inconsistency.  In rejecting this claim, the Second Circuit cited the above Supreme Court holdings and found that the discrepancy to which petitioner refers was an insignificant one.  *Jones*, *supra*, 982 So.2d at 117.  The undersigned agrees with the appellate court; it is difficult to see how this minor inconsistency could possibly have affected the outcome of the case.

Petitioner also claims that the prosecutor misrepresented certain facts and failed to correct false testimony during the examination of witnesses concerning the shootout in the church.  He argues that Deputy Kevin Cobb testified that during the shootout petitioner dropped his weapon, and that this contradicted other testimony that petitioner shot out the windows of the sheriff's vehicle.  Upon a review of the testimony however, the undersigned can find no such contradiction.  Cobb's testimony suggests that the windows were busted out during the course of the shootout; when Cobb's bullet grazed petitioner's head, petitioner dropped the weapon and the shootout ended.  *See* R. pp. 323-30, 350-55.  Further, as noted by the Second Circuit, this aspect of Deputy Cobb's testimony was thoroughly cross-examined by petitioner's attorney.  *See* R. pp. 342-49, 354-55.

Finally, petitioner points to the prosecutor's questioning of Patrick Lane, the crime lab technician.  Petitioner claims the prosecutor set up a scenario, regarding the path of the bullets

23

that hit the sheriff's car, that he knew to be untrue.  But despite petitioner's claims, the testimony shows that the prosecutor went through a few different scenarios in an attempt to establish who had fired the shots that hit the car.  *See* R. pp. 506-12.  It certainly had not been conclusively proven that Deputy Cobb had fired the shots, and the prosecutor was simply trying to show the jury that based on the evidence, petitioner could have fired them.  *See id.*  Again, petitioner's attorney had ample opportunity to cross-examine the witness, and in fact the testimony tended to show that the shots that broke the glass came from Cobb's gun.  *See*, *e.g.*, R. p. 523.

In sum, petitioner has failed to show that any of the prosecutor knowingly used false or misleading testimony, or that any allegedly false testimony affected the jury's verdict in any way. Accordingly, petitioner's tenth claim should be DENIED.

### E.        Improper Sequestration of Witnesses

Next, petitioner again alleges that the trial court erred by allowing the State's witnesses to remain in the courtroom during each other's testimony.  As in his fifth claim of ineffective assistance of counsel, petitioner claims that the four police officers, who were both the victims and the primary witnesses for the State, were not effectively separated during trial as required by La. Code of Evid. Art. 615.

The reasons petitioner's fifth claim should be denied hold true here as well.  The current version of article 615 clearly grants victims of the offense the right to remain in the courtroom despite the existence of a sequestration order.  *See* La. Code Evid. Art. 615.  Furthermore, contrary to petitioner's suggestion, the record does in fact indicate that none of the three witnesses on the first day of trial heard the testimony of the others.  R. p. 252.  And in any event, no sequestration order was in place at this time.  As for the second day of trial, it appears the only witnesses who were allowed to remain in the courtroom were the three victims who had yet to

24

testify.  *See* R. p. 250-51.

Petitioner has shown no violation of Louisiana law in this instance, nor has he shown any prejudice that might have denied him fair trial.  For these reasons, his eleventh claim should be DENIED.

### F.      Improper Determination of Sanity

In petitioner's final claim, he argues that a final ruling was never made as to his sanity at the time of the commission of the crimes.  He claims the evidence clearly shows he was suffering delusions at the time of the crime, and his right to a fair trial was therefore violated.

Contrary to petitioner's claim that no ruling on his sanity was made at trial, the jury did in fact rule on the issue.  This is demonstrated by the jury's verdicts rejecting petitioner's claim that he was insane at the time he committed these offenses.  Hence, because petitioner's insanity defense was adjudicated on the merits at his trial, he cannot obtain federal habeas relief on this issue unless the jury's verdict of sanity "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "[A]n application of law to facts is unreasonable only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *overruled in part on other grounds*, *Lindh v. Murphy*, 521 U.S. 320 (1997).

In Louisiana, a legal presumption exists that a defendant is sane and responsible for his actions at the time of an offense.  *See* La. Rev. Stat. Ann. § 15:432; *State v. Harris*, (La. App. 1st Cir. 2/18/00), 754 So.2d 304, 308.  To rebut the presumption of sanity and avoid criminal responsibility, a defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence.  *See* La. Code Crim. Pro. Art. 652.  Criminal responsibility is not

25

negated by the mere existence of a mental disease or defect; to be exempted from criminal responsibility, a defendant must show he suffered a mental disease or mental defect that prevented him from distinguishing between right and wrong with reference to the conduct in question.  La. Rev. Stat. Ann. § 14:14; *State v. Silman*, (La. 11/27/95); 663 So.2d 27, 32.  The determination of sanity is a factual matter.  All the evidence, including expert and lay testimony, along with the defendant's conduct and actions before and after the crime, should be reserved for the fact finder to establish whether the defendant has proven by a preponderance of the evidence that he was insane at the time of the offense.  *See Silman*, 663 So.2d at 32.

In the instant case, petitioner presented extensive evidence regarding his alleged inability to distinguish between right and wrong at the time of the offense.  This evidence was presented by way of testimony from petitioner's mental health expert, Dr. Scurria, his wife Robin Jones, and through the testimony of some of the State's witnesses, such as Nurse Gill.   Nevertheless, the jury apparently felt this evidence was overcome by evidence of petitioner's ability to make decisions, skillfully drive his vehicle through an extended high speed chase, speak coherently, and relate his medical history.  The evidence presented by the State was certainly sufficient for a rational jury to conclude that petitioner failed to establish his insanity by a preponderance of the evidence.  Thus, the undersigned cannot say that the jury's rejection of the insanity defense was based on an unreasonable determination of the facts or was an unreasonable application of law to facts, and petitioner's final claim should be DENIED.

## III.   Evidentiary Hearing

Under Rule 8(a) of the *habeas* Court Rules, "the judge must review the answer [and] any transcripts and records of state proceedings . . . to determine whether an evidentiary hearing is warranted."  28 U.S.C. § 2254, Rules Governing § 2254 Cases, Rule 8(a).  Section 2254(e)(2)

delineates the narrow circumstances under which an evidentiary hearing may be held in federal court:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The Supreme Court recently held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also McCamey v. Epps*, 658 F.3d 491, 496-97 (5th Cir. 2011) (holding that in light of *Pinholster*, the district court erred in allowing an evidentiary hearing; "the district court's review should have been . . . confined to the record in the state court"). Nevertheless, the Court explained in *Pinholster* that its ruling did not render § 2254(e)(2) superfluous. "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief . . . . [Section] 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Pinholster*, 131 S. Ct. at 1401.

Petitioner's claims were all adjudicated on the merits in state court. Thus, an evidentiary hearing is unavailable, as the undersigned's review under § 2254(d)(1) is limited to the record

before the state court.

<strong>CONCLUSION AND RECOMMENDATION</strong>

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by petitioner Larry Jones [doc. # 1] should be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District**

28

**Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 14th day of May, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE